UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM CAMOBRECO, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) 19-cv-10242-GAO |
| v. | ) |
| | ) |
| IBM CORPORATION, | ) |
| | ) |
| Defendant. | ) |

# FIRST AMENDED COMPLAINT

1. The Plaintiff, Adam Comobreco, is an individual who resides at 295 West Street, Duxbury, MA 02332.

2. The Defendant, IBM Corporation, is a New York corporation with a principal place of business at 75 Binney Street, Cambridge, MA 02142.

3. In about April 2016, Plaintiff began working for Defendant as a sales employee.

4. In January 2018, Plaintiff was promoted to Client Executive, and he was assigned a geographical territory in Massachusetts.

5. At the time of this change, Plaintiff, as well as several other sales employees, was permitted to continue to work on and receive commissions for five deals on which he had been working (called "Holdover Deals").

6. Plaintiff was told that if his Holdover Deals closed by March 31, 2018, he would receive a commission for those deals.

7. In addition, Plaintiff was told that if a Holdover Deal was close to closing as of March 31, 2018, he could request an exception to the March 31 closing date requirement and still receive the commission for the deal.

8. One of Plaintiff's Holdover Deals, with Ascension Healthcare ("Ascension") for Crittenton Hospital (called the "Crittenton Deal") effectively closed prior to March 31, 2018, but Defendant failed to pay Plaintiff a commission for that deal.

9. As of March 31, 2018, Ascension had agreed to the terms of the deal, and the contract had been submitted to Ascension's third party contract administrator for review and signature.

10. On April 5 and 6, Defendant received the contract documents from the third party processor, signed the documents and returned them to Ascension for signature.

11. The Defendant received the fully executed contracts from Ascension and recognized the revenue for the Crittenton Deal on May 30, 2018.

12. Prior to March 31, 2018, Plaintiff repeatedly contacted various members of Defendant's management, including his boss Bryan Derrick, the Business Line Sales Leader Joe Longo, and the VP of the East Sales Team, Twyla Neal, to make sure that he would get the commission on the Crittenton Deal.

13. Defendant's management repeatedly told Plaintiff to continue working on the Crittenton Deal, and no other sales employee was assigned to work on the deal.

14. At the time, Plaintiff had already participated in a review and hand-off to other employees for all deals he had been working on with Ascension, other than the Crittenton Deal.

15. No such review or hand-off was requested for the Crittenton Deal. Instead, Plaintiff continued to shepherd the Crittenton Deal to its conclusion, though no additional work was required after March 31, 2018 to close the deal.

16. On June 26, 2018, the Defendant told Plaintiff that he would not get a commission for the Crittenton Deal because the Defendant was not granting any exceptions to the rule that sales employees would not get commissions on any Holdover Deals that closed after March 31, 2018.

17. In fact, several employees received commissions on Holdover Deals that closed after March 31, 2018.

18. At the time, the Defendant told Plaintiff that the commission for the Crittenton Deal was paid to another sales representative who had no contact or involvement and did no work whatsoever on the Crittenton Deal.

19. Thereafter, the Defendant failed and refused to pay Plaintiff the commissions due him on the Crittenton Deal.

<u>Count I—Massachusetts Payment of Wage Law</u>

20. Plaintiff here incorporates by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21. On December 27, 2018, Plaintiff filed a complaint against Defendant with the Massachusetts Attorney General alleging a violation of the Massachusetts Payment of Wages Statute, Mass. Gen. Laws ch. 149, § 148.

22. By letter dated January 2, 2019, the Attorney General's office authorized Plaintiff to file a private action in this matter.

23. Defendant violated the Massachusetts Payment of Wages Statute, Mass. Gen. Laws ch. 148, § 149 and § 150, by failing to pay Plaintiff the commissions due him.

24. As a result of Defendant's failure to pay Plaintiff's commissions, he has suffered damages.

## Count II—Breach of Contract

25. Plaintiff here incorporates by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

26. Defendant breached its contract with Plaintiff by failing to pay Plaintiff the commissions due him for the Crittenton Deal.

27. As a result of Defendant's failure to pay Plaintiff's commissions, he has suffered damages.

## Count III—Unjust Enrichment

28. Plaintiff here incorporates by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

29. Plaintiff conferred upon Defendant a benefit in the form of working on and closing the Crittenton Deal for which Defendant did not pay Plaintiff.

30. Defendant was aware that it received a benefit from Plaintiff in the form of the work performed and the closing of the Crittenton Deal without payment and was aware that the value of such work and closure was nearly $1 million dollars in gross revenue to Defendant.

31. Defendant's retention of the benefit of the Crittenton Deal without payment to Plaintiff for his work on and closing of the Crittenton Deal would be inequitable to Plaintiff, who has suffered damages as a direct and proximate result of Defendant's failure to pay.

Count IV—Quantum Meruit

32. Plaintiff here incorporates by reference the allegations contained in paragraphs 1 through 19 as if fully set forth herein.

33. The parties had an implied agreement pursuant to which Defendant agreed to pay Plaintiff a commission for working on and closing the Crittenton Deal.

34. By working on and closing the Crittenton Deal, Plaintiff conferred a benefit on Defendant, i.e., nearly $1 million in gross revenue.

35. Based on the parties' course of dealings, Plaintiff expected to be paid a commission for working on and closing the Crittenton Deal, and that expectation was reasonable.

36. Defendant accepted and encouraged Plaintiff to work on and close the Crittenton Deal and expected to pay Plaintiff for his work.

37. As a direct and proximate result of Defendant's failure to pay Plaintiff for his work on and closing of the Crittenton Deal, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment in his favor and for compensatory damages, treble damages, attorney's fees, interest and costs and for such other relief as the court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES IN HIS COMPLAINT.

ADAM CAMOBRECO

By His Attorney,

__/s/ Judith A. Miller_____
Judith A. Miller, BBO # 544756
Miller Employment Law
233 Needham St., Suite 540
Newton, MA 02464
617-969-2900
millerjudi@aol.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served upon Jamie L. Kessler, Jackson Lewis P.C., 75 Park Plaza, Boston, MA 02116, and Justin R. Barnes and Kelli N. Church, Jackson Lewis P.C. 1155 Peachtree Street, NE, Suite 1000, Atlanta, GA 30309 via the Court's Electronic Filing System pursuant to Local Rule 5.2(b) on February 20, 2019.

___/s/Judith A. Miller_____
Judith A. Miller