# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADAM CAMOBRECO<br><br>    Plaintiff,<br><br>v.<br><br>IBM CORPORATION,<br><br>    Defendant. | Civil Action No. 19-cv-10242-GAO |

## DEFENDANT INTERNATIONAL BUSINESS MACHINE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant International Business Machines Corporation ("IBM" or "Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6), has moved the Court to dismiss Plaintiff Adam Camobreco's ("Plaintiff") Amended Complaint in its entirety. IBM respectfully submits the following Memorandum of Law in Support of its Motion to Dismiss.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENTS

On January 4, 2019, Plaintiff – a former sales representative for IBM – sued IBM alleging that IBM owes him purportedly unpaid commissions related to "holdover deals" in 2018. Plaintiff initially asserted claims for (1) breach of contract and (2) violation of the Massachusetts Payment of Wage Law. On February 13, 2019, IBM moved to dismiss Plaintiff's Complaint. [Doc. No. 4.] In response to IBM's Motion, Plaintiff filed an Amended Complaint on February 21, 2019.[1] [Doc. No. 5.] In his Amended Complaint, Plaintiff now asserts claims for (1) breach of contract; (2) violation of the Massachusetts Payment of Wage Law; (3) unjust enrichment; and (4) quantum meruit.

---

[1] Plaintiff also filed a response to IBM's Motion to Dismiss. [Doc. No. 6.] Because Plaintiff filed an Amended Complaint, however, IBM's Motion to Dismiss Plaintiff's original complaint is moot.

Despite his attempts to save his claims by pointing to a "side agreement" with IBM regarding the "holdover deals," as an initial matter, Plaintiff has continued to fail to allege sufficient facts to state claims regarding any such side deal, as he does not even allege what the deal was or that IBM agreed to it.

In any event, even if Plaintiff had pled the existence of a side deal, all of Plaintiff's claims continue to be foreclosed by the plain language of the Incentive Plan Letter ("IPL") which governed his commission payments.[2]

With respect to his breach of contract claim, that claim fails as a matter of law because the IPL governed his commission payments and it did not require IBM to pay any specific amount of commissions. In other words, there was no agreement between the parties under Massachusetts law regarding the payment of commissions (oral or otherwise) because the IPL gave IBM the sole discretion to determine Plaintiff's commission payments. This forecloses any breach of contract claim by Plaintiff, including any claim based on a "side agreement." Notably, Plaintiff is not the first Plaintiff to allege a "side agreement" with IBM outside the IPL (these cases are discussed below). However, while Plaintiff may not like the fact that IBM had the right to do so, the plain terms of his incentive plan granted IBM sole discretion to change the terms of his incentive plan or his commission payments, and Plaintiff agreed to those terms. It is for this reason that courts consistently dismiss breach of contract claims for allegedly unpaid commissions, including claims

---

[2] In ruling on a motion to dismiss, courts may consider documents attached to a motion to dismiss as long as they are integral to the complaint. *See Medeiros v. Lenovo (United States), Inc.*, No. 15-CV-10261-LTS, 2016 U.S. Dist. LEXIS 15469, at *13-14 (D. Mass. Jan. 27, 2016). Because Plaintiff's commission payments were governed by the terms of his IPL, Plaintiff incorporated the IPL into the Complaint by affirmatively alleging that IBM failed to pay him commissions for the Crittenton Deal. (*See* Am. Compl. ¶¶ 16, 19.) Accordingly, as explained more fully below, the Court may review the terms of Plaintiff's IPL when deciding IBM's Motion to Dismiss without converting the Motion into one for summary judgment. *Id.*

2

which are premised on alleged "side agreements."

Plaintiff's Massachusetts Wage Act claim also fails as a matter of law for similar reasons. Courts have interpreted the Wage Act to preclude claims for unpaid wages where the employer retained sole discretion whether to pay any commissions. Here, as set forth in Plaintiff's IPL, IBM retained sole discretion over whether to pay Plaintiff commissions for any deals, including the Crittenton Deal referenced in Plaintiff's Amended Complaint. Therefore, the Court should also dismiss Plaintiff's Wage Act claim.

Plaintiff's quantum meruit and unjust enrichment claims also fail. In light of the unambiguous disclaimers in his IPL, Plaintiff cannot demonstrate he had any reasonable expectation of receiving additional commissions from IBM or that IBM's failure to pay him commissions would be unjust. Numerous courts have come to the same conclusion and concluded that the disclaimers in the IPLs foreclose quasi-contractual claims for unpaid commissions. Thus, the fact that Plaintiff accepted the terms of his IPL, which expressly stated that IBM reserved the discretion to review and adjust his commission payments, forecloses any attempt by Plaintiff to show that IBM failed to reasonably compensate him during his employment.

## II. FACTUAL BACKGROUND

### a. Factual Allegations Contained in Plaintiff's Amended Complaint[3]

Plaintiff began working for IBM in or about April 2016 as a sales representative. (Am. Compl. ¶ 3.) In or about January 2018, Plaintiff was promoted to Client Executive. (*Id.* ¶ 4.) At the time of his promotion, Plaintiff claims that he was told that he could receive commissions on five deals that he had previously been working on ("Holdover Deals") if the deals closed by March

---

[3] The factual allegations in the Amended Complaint are assumed to be true for purposes of this Motion only.

31, 2018. (*Id.* ¶¶ 5, 6.) If a Holdover Deal was close to closing by March 31, 2018, but closed after, Plaintiff claims he was told he could request an exception to the March 31, 2018 closing date. (*Id.* ¶ 7.) One of Plaintiff's Holdover Deals was with Crittenton Hospital (the "Crittenton Deal"), and it did not close by March 31, 2018, but rather was signed and funded on May 30, 2018. (*Id.* ¶¶ 8, 10.) IBM did not grant an exception on the Crittenton Deal and did not pay Plaintiff commissions for that deal. (*Id.* ¶ 16.) Plaintiff contends that IBM had entered into a contract with him to pay him commissions on the Crittenton Deal, and that IBM breached that contract when it failed to pay him $78,427.16 in commissions on the deal. (*Id.* ¶¶ 19, 21-27; *see also* Civil Action Cover Sheet.)

### b. **The Terms of Plaintiff's Incentive Plan Letters ("IPLs")**

Plaintiff had a written commission plan – called an Incentive Plan Letter or IPL – which covered the sales period from January 1, 2018 through December 31, 2018.[4] Plaintiff accepted the terms of the IPL on March 6, 2018. (Ex. 1 at p. 1.) The terms of Plaintiff's IPL gave IBM the exclusive and unlimited discretion to review and modify Plaintiff's incentive plan and commissions. Specifically, Plaintiff's IPL contained the following language:

> **Right to Modify or Cancel:** IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing your accepted Incentive Plan Letter.

(Ex. 1 at p. 13.) The IPL defined the "Plan" as including all of the incentive plan information contained in the IPL and at IBM's Worldwide Incentives Workplace, which is an internal IBM website and is hyperlinked within the IPL. (*Id.*) The IPL also made it clear that, without an IPL

---

[4] A true and accurate copy of Plaintiff's IPL for 2018 is attached hereto as Exhibit 1. *See* Declaration of Tracy Byers attached hereto as Exhibit 2.

4

in place, an employee is "not eligible to receive any incentive payments." (*Id.*)

The IPL went on to note that IBM maintains the discretion to review and adjust incentive achievement and/or related payments on certain transactions. Specifically, Plaintiff's IPL stated:

> **Review of a Specific Transaction:** If a specific customer transaction has a disproportionate effect on an incentive payment when compared with the opportunity anticipated during account planning and used for the setting of sales objectives, or is disproportionate compared with your performance contribution towards the transaction, IBM reserves the right to review and, in its sole discretion, adjust the incentive achievement and/or related payments.

(Ex. 1 at p. 14.)

The IPL also provided that IBM may change incentive payment calculations resulting from errors:

> **Adjustment for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incorrect incentive payments resulting from incomplete incentives processes or other errors in the measurement of achievement or the calculation of payments, including errors in the creation or communication of sales objectives. Depending on when an error is identified, corrections may be made before or after the last day of the full-Plan period, and before or after the affected payment has been released.

(*Id.*)

The IPL also explained that incentive payments are not considered earned until IBM completes its review of business results, including the review of any commissions to be paid:

> **Earnings:** Incentive payments you may receive for Plan-to-Date achievement are a form of advance payment based on incomplete business results. Your incentive payments are earned under the Plan terms, and are no longer considered Plan-to-Date advance payments, only after the measurement of complete business results following the end of the full-Plan period. (Or, if applicable, after the date you left the Incentive Plan early.) Incentive payments will be considered earned only if you have met all payment requirements, including: (1) you have complied with the Incentive Plan; (2) you have not engaged in any fraud, misrepresentation or other inappropriate conduct relating to any of your business transactions or incentives; (3) and the customer has paid the billing for the sales or services transaction related to your incentive achievement.

(Ex. 1 at p. 13.)

5

## III. ARGUMENT AND CITATION OF AUTHORITY

### a. Legal Standard for Motions to Dismiss.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).). In reviewing the sufficiency of a complaint, the Court conducts a two-step, context-specific inquiry. *See García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint "as a whole" to distinguish the factual allegations from the conclusory legal allegations contained therein. *Id.* The Court must accept the factual allegations as true. *Id.* Conclusory legal assertions may be disregarded. *Id.* Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks and citation omitted).

### b. The Court Should Dismiss Plaintiff's Breach of Contract Claim.

Plaintiff's breach of contract claim fails as a matter of law. Here, while unclear, Plaintiff seems to be alleging that he had a "side" contract with IBM separate and apart from his IPL regarding the payment of commissions on the Crittenton Deal. (Am. Compl. ¶¶ 6, 16, 25-27.) To prevail on a breach of contract claim, under Massachusetts law Plaintiff must show (1) an agreement between the parties that was supported by valid consideration (2) he was ready, willing

and able to perform (3) the defendant failed to perform a material obligation under the agreement and (4) the plaintiff suffered damages as a result of defendant's failure to perform. *Robinson v. Town of Marshfield*, No. 16-12560-NMG, 2019 U.S. Dist. LEXIS 6051, at *19 (D. Mass. Jan. 11, 2019). To be enforceable, there must be an agreement on the essential terms of the transaction in order for the nature and extent of the parties' obligations to be determined and, hence, enforced. *South Shore Sav. Bank v. Paceline L.P.*, No. 10-11828-DJC, 2012 U.S. Dist. LEXIS 33506, at *8 (D. Mass Mar. 14, 2012) (citing *Novel Iron Works, Inc. v. Wexler Constr. Co.*, 26. Mass. App. Ct. 401, 408, 528 N.E.2d 142 (1988)). Plaintiff has not (and cannot) alleged sufficient facts to state a plausible breach of contract claim.

### i. *Plaintiff has not Alleged an Enforceable Oral Contract.*

As an initial matter, to the extent Plaintiff contends he had a "side" oral contract with IBM regarding payment of commissions on the Crittenton deal, he has not alleged sufficient facts to establish that the parties entered into an enforceable oral contract. An alleged oral contract is unenforceable if it is silent on essential terms, which includes the manner in which compensation will be calculated. *Luandano v. 214 South Street Corp.*, 608 F. Supp 2d 185, 194-95 (D. Mass. 2009) (citing *Held v. Zamparelli*, 13 Mass. App. Ct. 957, 958, 431 N.E.2d 961, 962 (1982) ("essential terms include but are not limited to when plaintiff's share of the profits would be computed and dispersed, the duration of agreement, and plaintiff's responsibility if there arose a claim against the property"); *Tharpe v. Cisco Sys. Inc.*, No 07-12279-RWZ, 2008 U.S. Dist. LEXIS 18631 (D. Mass. Feb. 14, 2008) (holding plaintiff cannot maintain a breach of contract claim where plaintiffs have only alleged an oral agreement regarding a percentage range without any agreement as to how that percentage range will be calculated or the duration of the agreement)).

Here, Plaintiff has not alleged sufficient facts to allege the existence of any contract. It is undisputed that the Crittenton Deal did not close prior to March 31, 2018, and that Plaintiff needed an exception to get paid commissions on that deal. (Am. Compl. ¶¶ 6-11.) Plaintiff does not allege that he received any such exception. In fact, he affirmatively alleges that he was *not* granted an exception. (*Id.* ¶ 16.) While Plaintiff alleges he was told "to continue working on the Crittenton Deal" and that "no other sales employee was assigned to work on the deal" (*id.* ¶ 13), he does not allege that anyone at IBM promised him he would be paid on the deal.[5] Thus, he has not alleged the existence of any agreement at all.

Moreover, Plaintiff has not alleged that any purported oral contract contemplated how his commissions would be calculated, the formula that would be applied, if any amount would be excluded from the calculation, or the amount he stood to earn. Thus, because the terms of the alleged oral contract are indefinite, Plaintiff has not alleged the existence of an enforceable oral contract. *See Conway v. Licata*, 104 F. Supp. 3d 104, 114 (D. Mass. 2015) (finding no enforceable contract where the purported oral contract did not "specify the revenues that would be considered in calculating compensation or any amounts that might be excluded from the calculation…the degree of effort Defendants must invest during the life of the contract…whether [plaintiff] must work exclusively pursuant to the contract…the duration of the agreement, the duration of any period for which Defendants would be entitled to a commission, the ability of the parties to terminate the agreement, and the terms, if any, that would regulate any such termination.").[6]

---

[5] As explained below, even if he had alleged IBM made such promises, the terms of his IPL would still foreclose his claims.

[6] In his premature Response to IBM's Motion to Dismiss, Plaintiff argues that the calculation of his commissions was determined "as commissions had been calculated in the past." (Resp. at 8.) However, the way IBM determines commissions is governed by the IPL. Plaintiff claims the alleged oral contract "superseded those terms", thus eliminating the manner in which the parties calculated commissions in the past. Plaintiff cannot have it both ways. Either the IPL governed

## ii. *IBM Retained Sole Discretion to Adjust Plaintiff's Commissions.*

Additionally, even if Plaintiff had alleged sufficient facts to establish the existence of an oral contract, Plaintiff's breach of contract claim still fails as a matter of law because IBM retained sole discretion regarding the payment of commissions to Plaintiff.

Plaintiff's IPL granted IBM sole discretion regarding the payment of commissions to Plaintiff. For example, Plaintiff's IPL expressly stated that **"IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing your accepted Incentive Plan Letter."** (Ex. 1 at p. 13.) Plaintiff's IPL further gave examples of when IBM could adjust commissions, such as for specific transactions and for errors in the calculation or communication of sales objectives. (Ex. 1 at p. 14.) The IPL also explained that incentive payments are not considered earned until IBM completes its review of business results, including the review of any commissions to be paid. (Ex. 1 at p. 13.) In addition, as to the Crittenton Deal in particular, Plaintiff admits that he would have had to receive an "exception" in order to get paid on the deal. (Compl. ¶ 16.) In light of the unlimited discretion IBM retained with respect to the payment of commissions, IBM had no obligation (contractual or otherwise) to pay Plaintiff any particular amount of commissions. *Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 48 (1st Cir. 2013) (holding that "[b]ecause [employer] was under no obligation to pay the bonus, [plaintiff] was not deprived of wages that he [had] earned"); *Comley v. Media Planning Grp.*, 2015 U.S. Dist. LEXIS 76383, at *12 (D. Mass. June 12, 2015) (holding that bonus which was "at the sole

---

and IBM had sole discretion regarding Plaintiff's commissions, or it did not and the alleged contract lacked the essential terms to make it enforceable.

9

discretion of [the employer] and can be eliminated or amended at any time" did not constitute wages under the Wage Act).

Although Plaintiff attempts to avoid the clear disclaimers in his IPL by arguing that he had an agreement outside the IPL, numerous courts have recently rejected this same argument. For example, in *Fessler v. IBM*, Plaintiff alleged a breach of contract claim based on a PowerPoint presentation and oral statements by his managers that commissions would be uncapped. Civ. Action No. 1:18-cv-798, 2018 U.S. Dist. LEXIS 202725, at *4-5 (E.D. Va. Nov. 28, 2018). Fessler argued that these promises created a "side agreement" and obligated IBM to pay him uncapped commissions and that it breached these promises by capping his commissions. *Id.* The Eastern District of Virginia disagreed and dismissed Fessler's complaint. The court in *Fessler* looked to the IPLs and determined that "[t]he IPLs make clear that no meeting of the minds occurred here, as they establish that IBM lacked the intent to obligate itself to pay [plaintiff] uncapped commissions. Rather, the IPLs indicate that IBM intended the opposite, namely to maintain sole discretion over the amount, if any, of commission payments." *Id.* at *6.

Additionally, in *Vinson v. IBM*, Vinson alleged breach of an oral and/or implied contract. No. 1:17-cv-00798, 2018 U.S. Dist. LEXIS 164042, at *8-9 (M.D.N.C. Sept. 25, 2018). Vinson agreed that the IPL did not create an enforceable contract, but argued that a PowerPoint and statements by his managers that his commissions would not be capped created an enforceable "side" contract. *Id.* IBM argued that the IPL prevented formation of any enforceable contract and that the IPL "precluded Vinson from relying on any statements regarding commissions outside the IPL – such as in the PowerPoint presentation – to create a 'side contract' that supersedes the IPL." *Id.* at *10. The Middle District of North Carolina agreed and dismissed Vinson's contract claim. *Id.* at *14-15.

Notably, numerous other courts across the country – including four Circuit Courts of Appeals – have addressed this exact scenario and have dismissed nearly identical breach of contract claims seeking unpaid commissions in light of the clear disclaimers in IBM's incentive plans. *See*, *e.g.*, *Wilson v. IBM*, 610 Fed. App'x 886, 888-89 (11th Cir. 2015) (assuming without deciding that the plaintiff's IPL created an enforceable contract but holding that "the clear terms of the IPL provide that IBM holds all the cards with respect to how sales commissions are calculated" thereby dismissing the plaintiff's breach of contract claim); *Kavitz v. IBM*, 458 F. App'x 18 (2d Cir. 2012) (finding materially identical language contained in an incentive plan reflected that IBM did not intend for the incentive plan to create an enforceable contract); *Geras v. IBM*, 638 F.3d 1311 (10th Cir. 2011) (affirming 12(b)(6) dismissal of plaintiff's claims and holding that this same language "does not manifest an intent [by IBM] to be bound by the terms of its incentive plan, nor could [the plan] reasonably be relied on by an employee as a commitment to comply with those terms"); *Jensen v. IBM*, 454 F.3d 382, 388 (4th Cir. 2006) (holding that an IBM incentive plan with substantially similar language did not create a binding contract regarding the payment of commissions because the plan "did not invite a bargain or manifest a willingness to enter into a bargain," but instead "manifested [a] clear intent to preclude the formation of a contract"); *Morris v. IBM*, No. 1:18-cv-0042-LY (W.D. Tex. Feb. 4, 2019) (granting IBM's motion to dismiss plaintiff's breach of contract claim because given the clear disclaimers in the IPL, it was not an enforceable contract, and, even if it was, IBM did not breach it because IBM had the "right to modify the IPL's terms, adjust for error, and adjust for disproportionate incentive payments.")[7]; *G.S. (Steve) Rapier v. IBM*, No. 1:17-cv-4640-MHC, 2018 U.S. Dist. LEXIS 117504 (N.D. Ga.

---

[7] The *Morris* Report & Recommendation is attached hereto as Exhibit 3. The R&R was adopted by the district court on February 4, 2019.

Apr. 12, 2018) (granting IBM's 12(b)(6) motion to dismiss the plaintiff's breach of contract claim where the IPL "gave IBM the 'unilateral and unconditional authority' to (1) deem the [] deal a 'significant transaction' and (2) modify or cancel [the plaintiff's] commissions up until the point in time that it assessed the impact of that deal on [the plaintiff's] sales quota."); *Pfeister v. IBM*, No. 17-cv-03573, 2017 U.S. Dist. LEXIS 170970, at *7 (N.D. Cal. Oct. 17, 2017) (granting IBM's motion for judgment on the pleadings on plaintiff's contract claim and finding a nearly identical incentive plan was not an enforceable contract); *Kemp v. IBM*, No. 3:09-cv-03683, 2010 U.S. Dist. LEXIS 118801, at *13-14 (N.D. Cal. Nov. 4, 2010) (granting IBM's motion to dismiss and concluding the substantially similar incentive plan was not an enforceable contract); *Schwarzkopf v. IBM*, No. C 08-2715, 2010 U.S. Dist. LEXIS 46813, at *4-5, 25 (N.D. Cal. May 12, 2010) (finding that a materially similar disclaimer in IBM's incentive plan letter at issue demonstrated "IBM's clear intent not to contract" and limited "any implied understanding of a promise to pay commission in full"); *Gilmour v. IBM*, No. CV 09-04155, 2009 U.S. Dist. LEXIS 127142, at *7 (C.D. Cal. Dec. 16, 2009) (granting IBM's motion for judgment on the pleadings on plaintiff's wage claim under the California Labor Code and finding "the Incentive Plan and Quota Letter did not create an enforceable employment contract"); *Rudolph v. IBM*, 2009 U.S. Dist. LEXIS 75261, at *9-11 (N.D. Ill. Aug. 21, 2009) (granting IBM's motion for judgment on the pleadings on plaintiff's breach of contract and wage payment claims in light of IBM's ability to modify its compensation plans).

Consistent with the numerous other courts that have addressed this issue, this Court should find that the clear disclaimers in Plaintiff's IPL preclude him from asserting a breach of contract claim for unpaid commissions.

       **iii.** ***Even if Plaintiff Had a Contract With IBM, IBM Did Not Breach the Contract.***

Even if Plaintiff has alleged the existence of an enforceable oral or written contract (which he has not), his contract claim still fails as a matter of law because he did not allege sufficient facts to demonstrate that IBM breached the alleged contract. Plaintiff alleges in his Amended Complaint that he was told he would receive commissions on the Holdover Deals *if* they closed prior to March 31, 2018, and if they did not, he could only receive commissions if IBM granted him an exception. (Am. Compl. ¶¶ 6, 7.) Additionally, although he alleges that the Crittenton Deal "effectively closed" prior to March 31, 2018, he admits that it was not signed or funded until May 30, 2018, nearly two months later. (Am. Compl. ¶¶ 8, 11.) By his own admission, he did not complete the task that would have allegedly guaranteed him commission payment for the Cittenton Deal. (*Id.*) Moreover, Plaintiff admits that since the deal did not close prior to March 31, 2018, IBM exercised its discretion and decided not to grant an exception to award him commissions on the Crittenton Deal. (*Id.* at ¶ 16.)

Therefore, even if a contract existed, Plaintiff's own allegations demonstrate that IBM did not breach any alleged contract, but rather, exercised the discretion it retained. *See Wilson v. IBM*, 610 Fed. App'x 886, 888-89 (11th Cir. 2015) (assuming without deciding that the plaintiff's IPL created an enforceable contract but holding that "the clear terms of the IPL provide that IBM holds all the cards with respect to how sales commissions are calculated" thereby dismissing the plaintiff's breach of contract claim); *Morris v. IBM*, No. 1:18-cv-0042-LY (W.D. Tex. Feb. 4, 2019) (granting IBM's motion to dismiss plaintiff's breach of contract claim because given the clear disclaimers in the IPL, it was not an enforceable contract, and, even if it was, IBM did not breach it because IBM had the "right to modify the IPL's terms, adjust for error, and adjust for disproportionate incentive payments.").

    c. **The Court Should Dismiss Plaintiff's Massachusetts Wage Act Claim.**

13

Plaintiff's Wage Act claim also fails as a matter of law. To state a claim under the Massachusetts Wage Act, Plaintiff must allege that: (1) he was an employee under the statute; (2) the pay at issue constitutes a "wage" under the statute; and (3) defendant violated the Wage Act by not paying him his wages in a timely manner. *See Stanton v. Lighthouse Financial Services, Inc.*, 621 F. Supp. 2d 5, 10 (D. Mass 2009) (citation omitted).

The Massachusetts Supreme Judicial Court has explained that the Wage Act was enacted to limit "the interval between the completion of a work week and the payday on which the wages earned in that week will be paid." *Am. Mutual Liability Ins. Co. v. Commissioner of Labor and Industries*, 163 N.E.2d 19, 20 (Mass. 1959). The statute requires employers to pay employees earned wages "in a timely fashion, according to the parameters of the statute." *Okerman v. VA Software Corp.*, 871 N.E.2d 1117, 1121 (Mass. App. Ct. 2007).

While the statute makes clear on its face that holiday pay, vacation pay, and definitely determined wages fall within its protections, the term "wages" does not apply to discretionary incentive pay. Numerous courts have explained that discretionary incentive pay awards, like Plaintiff's commissions at issue in this case, do not constitute "wages" under the Wage Act when the employer retains discretion to award them. *See Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 48 (1st Cir. 2013) (holding that "[b]ecause [employer] was under no obligation to pay the bonus, [plaintiff] was not deprived of wages that he [had] earned"); *Comley v. Media Planning Grp.*, 2015 U.S. Dist. LEXIS 76383, at *12 (D. Mass. June 12, 2015) (holding that bonus which was "at the sole discretion of [the employer] and can be eliminated or amended at any time" did not constitute wages under the Wage Act); *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280, 288 (D. Mass. 2013) ("Discretion prevents commissions from being definitely determined if the employer is under no obligation to award them."); *Weems v. Citigroup*, 453 Mass. 147, 153-154 (2009)

(finding that bonuses which were "potentially awarded" were not protected under the Wage Act); *NaviSite, Inc. v. Cloonan*, 2005 Mass. Super. LEXIS 408, at *38-39 (Mass. Super. Ct. May 11, 2005) (holding that a "retention bonus and the performance bonus . . . lie well outside the statute's reach"); *Dennis v. Jager, Smith & Stetler, P.C.*, 2000 Mass. Super. LEXIS 114, at *3-4 (Mass. Super. Ct. April 10, 2000) (recognizing that courts distinguish wages, "which include assured compensation and compensation equivalents such as accrued vacation pay and sick leave, from compensation triggered by contingencies' [that are] thus outside the scope of the Wage Act").

Here, as explained above, IBM retained the discretion whether to award Plaintiff commissions. *See supra* Section III.b(ii). The disclaimers in Plaintiff's IPL as well as his admission that he needed an exception to get paid on the Crittenton Deal render his commissions completely discretionary. Noticeably absent from Plaintiff's Amended Complaint is an allegation that IBM had an obligation to grant him an exception or that he was promised he would be granted an exception. Rather, as he admitted, IBM decided not to grant an exception and therefore awarded him no commissions for the Crittenton Deal. (Am. Compl. ¶ 16.) The fact that IBM retained sole discretion whether to award him commissions is fatal to his Wage Act claim.

This result is consistent with the numerous courts across the country which have concluded that the IPLs grant IBM the sole discretion regarding whether or how much to pay sales representatives in commissions. *See supra* Section III.b(ii). Accordingly, Plaintiff's Wage Act claim should be dismissed. *See*, *e.g.*, *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 193-194 (D. Mass. 2010) (granting motion to dismiss where the complaint sought to recover discretionary bonuses which were unprotected by the Wage Act).

d. **The Court Should Dismiss Plaintiff's Unjust Enrichment and Quantum Meruit Claims.**

Plaintiff's claims for quantum meruit and unjust enrichment likewise fail as a matter of law. Under Massachusetts law, the theories are interrelated and essentially indistinguishable. *Wright v. Balise Motor Sales Co.*, 2017 Mass. Super. LEXIS 44, at *5 (Mass. Sup. Ct. 2017). To prevail on a claim in quantum meruit, Plaintiff must show (1) that he conferred a measurable benefit upon IBM; (2) a reasonable person in IBM's position would have expected to compensate Plaintiff upon accepting his services; and (3) Plaintiff provided the services with the reasonable expectation of receiving compensation. *Tomei v. Corix Untils. (U.S.), Inc.*, No. 07-cv-11928-DPW, 2009 U.S. Dist. LEXIS 83416, at *64-65 (D. Mass. Sept. 10, 2009) (citing *New England Insulation Co. v. Liberty Mutual Ins. Co.*, No. 08-P-1587, 2009 Mass. App. LEXIS 160, at *2 (Mass. App. Ct. Mar. 31, 2009)). Similarly, under Massachusetts law, unjust enrichment is defined as "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Tomei*, 2009 U.S. Dist. LEXIS 83416, at *67 (citation omitted). Put simply, Plaintiff must have had a reasonable expectation of receiving payment, and IBM must have reasonably expected to pay him. *Id.* ("A key factor in the application of quantum meruit and unjust enrichment is the reasonable expectations of the parties.").

Plaintiff's quantum meruit and unjust enrichment claims fail because he cannot demonstrate that he had any reasonable expectation of receiving additional commissions in light of the unambiguous disclaimers contained in his IPL and his own admission that IBM retained discretion whether to grant an exception for a deal closed after March 31, 2018. (Am. Compl. ¶ 7, 16). Numerous courts which have addressed similar equitable claims have held that the disclaimers in the IPL preclude these types of claims. *See, e.g., Fessler v. IBM*, Civ. Action No. 1:18-cv-798, 2018 U.S. Dist. LEXIS 202725, at *13-15 (E.D. Va. Nov. 28, 2018) (dismissing plaintiff's quantum meruit and unjust enrichment claims and holding that "[t]he IPLs made it

16

possible for Fessler to receive commissions in addition to his salary, but clearly foreclosed any guarantee of commission payments. Fessler accepted the terms of each of the three relevant IPLs. Because Fessler accepted these IPLs, and they clearly stated that IBM could modify or eliminate Fessler's commission payments, neither IBM nor Fessler could have reasonably expected that IBM would pay Fessler commissions greater than the commissions he received."); *Middleton v. IBM*, Case No. 1:18-cv-03724-LMM, at p. 14 (N.D. Ga. Jan. 2, 2019)[8] (dismissing plaintiff's claim for unjust enrichment because "the terms of the IPL make clear that IBM has complete discretion over the payment of commissions" and "Plaintiff does not allege that he provided a separate benefit for which he was not compensated in some way by his base salary arrangement."); *Morris v. IBM*, No. 1:18-cv-0042-LY (W.D. Tex. Feb. 4, 2019) (dismissing plaintiff's quantum meruit claim where the IPL precluded equitable relief because "the IPL provided the terms by which his commissions were governed and [plaintiff failed to allege] that he provided IBM services beyond those contemplated by the IPL…").

Therefore, Plaintiff's quantum meruit and unjust enrichment claims should be dismissed as a matter of law. *See Pero v. IBM*, No. 12-CV-07484 (KM), 2014 U.S. Dist. LEXIS 2461 (D.N.J. Jan. 2, 2014) (dismissing unjust enrichment claim by former IBM sales representative because plaintiff failed to establish his entitlement to additional commissions).

    **e.** **The Court can Consider Plaintiff's IPL Without Converting This Motion To Dismiss to a Motion for Summary Judgment.**

---

[8] A copy of the *Middleton* Order is attached hereto as Exhibit 4.

In his Response to IBM's Motion to Dismiss [Doc. No. 6], Plaintiff references Rule 56 of the Federal Rules of Civil Procedure and argues that he needs to conduct discovery regarding the IPL before the Court can rule on IBM's Motion. As an initial matter, this Motion is not one for summary judgment. The Court is permitted to consider documents attached to a motion to dismiss without converting the motion into a motion for summary judgment so long as the documents are integral to the complaint. *Clorox Co. v. Proctor & Gamble Commer. Co.*, 228 F.3d 24, 28 (1st Cir. 2000); *Medeiros v. Lenovo (United States), Inc.*, No. 15-CV-10261-LTS, 2016 U.S. Dist. LEXIS 15469, at *13-14 (D. Mass. Jan. 27, 2016). Here, Plaintiff's IPL is integral to the Amended Complaint. Plaintiff's commission payments were governed by the IPL, and although Plaintiff is seeking relief for a "side deal" outside the IPL, his claims cannot be determined without reference to the IPL. Essentially, a conversation regarding Plaintiff's commissions cannot be had without his IPL. Thus, his IPL is integral to the Amended Complaint and should be considered by the Court without converting this Motion into one for summary judgment. *See Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005) (finding that when a complaint's factual allegations are expressly linked to, and admittedly dependent upon, a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can now review it in deciding a motion to dismiss under Rule 12(b)(6).) (citation and quotations omitted).[9]

Second, even if the Court did not consider the IPL, Plaintiff's claims still fail as a matter of law. As Plaintiff has alleged, he was told that if a deal was close to closing on March 31, 2018, he could request an exception to the March 31 closing date requirement and still receive commission. (Am. Compl. ¶ 7.) Plaintiff admits no such exception was granted, nor does he allege that he was ever promised or guaranteed any such exception. As explained above, this defeats his

---

[9] Plaintiff also takes issue with the fact that the IPL was not authenticated in IBM's first Motion to Dismiss. This has been remedied. *See* Ex. 2.

contract claim because IBM did not breach any purported agreement, his Massachusetts Wage Act Claim because IBM retained discretion whether to award him commissions at all for the Crittenton Deal, and his quantum meruit and unjust enrichment claims because he cannot establish he reasonably expected to be compensated for deals closed after March 31, 2018. Thus, even without reference to the IPL, his claims still fail and should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, IBM respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Amended Complaint and dismiss this action in its entirety.

Respectfully submitted this 7th day of March, 2019.

IBM CORPORATION,

By its attorneys,

| | |
|---|---|
| /s/ Jamie L. Kessler | /s/ Justin R. Barnes |
| Jamie L. Kessler BBO #681867 | Justin R. Barnes (*pro hac vice forthcoming*) |
| Jackson Lewis P.C. | Georgia Bar No. 105220 |
| 75 Park Plaza | E-mail: Justin.Barnes@jacksonlewis.com |
| Boston, MA 02116 | Kelli N. Church (*pro hac vice forthcoming*) |
| (617) 367-0025 | Georgia Bar No. 751414 |
| jamie.kessler@jacksonlewis.com | E-mail: Kelli.Church@jacksonlewis.com |
| | 171 17th Street, NW, Suite 1200 |
| | Atlanta, Georgia 30363 |
| | Tel: (404) 525-8200 Fax: (404) 525-1173 |

Dated: March 7, 2019

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 7, 2019.

/s/ Jamie L. Kessler
Jackson Lewis P.C.