UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
ADAM CAMOBRECO,                           )
                                          )
                    Plaintiff,            )          Civil Action No.
                                          )          19-cv-10242-GAO
v.                                        )
                                          )
IBM CORPORATION,                          )
                                          )
                    Defendant.            )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## SECOND MOTION TO DISMISS AND PLAINTIFF'S
## MEMORANDUM IN SUPPORT OF ITS RULE 56(d) MOTION

The Plaintiff, Adam Camobreco, hereby opposes Defendant's Second Motion to Dismiss, has moved this Court, pursuant Fed. R. Civ. P. 56(d), for time to conduct discovery in this matter, and submits this memorandum in support of his opposition to Defendant's Second Motion to Dismiss and in support of his Rule 56(d) motion.

## Introduction

In this action, Plaintiff, a former sales employee of Defendant IBM Corporation (referred to as "Defendant" or "IBM"), entered into a unilateral contract in which IBM offered to pay Plaintiff a commission if he closed the Crittenton Deal (Compl. ¶ 8)[1] by a particular date. Plaintiff accepted the offer via his performance, closed the Crittenton Deal, and IBM promptly reneged on its agreement to pay the commission.

On January 4, 2018, the Plaintiff filed this action in Massachusetts Superior Court alleging that IBM breached the unilateral contract and violated the Massachusetts Payment of Wage Act Mass. Gen. Laws ch. 149, § 148 (the "Wage Act") by failing to pay him the Crittenton

---
[1]     "Compl." refers to the First Amended Complaint Plaintiff filed in this case on February 21, 2018.

Deal commission. On February 6, 2019, Defendant removed this action to this Court. On February 13, 2019, Defendant filed a motion to dismiss the complaint and a memorandum in support thereof (called, for purposes of this opposition, the "Initial Motion to Dismiss").

On February 21, 2019, Plaintiff filed his First Amended Complaint in which he added counts for quantum meruit and unjust enrichment. On that same date, Plaintiff filed his Opposition to Defendant's Motion to Dismiss and filed a Rule 56(d) Motion. Instead of filing a rebuttal to Plaintiff's opposition, an opposition to the Rule 56(d) Motion and a motion to dismiss the two counts added in the First Amended Complaint, on March 7, 2019, Defendant filed a second motion to dismiss and a memorandum in support thereof (called, for purposes of this opposition, the "Second Motion to Dismiss"). Defendant's Second Motion to Dismiss is largely identical to the Initial Motion to Dismiss, except that the Defendant clarified its argument regarding its motion to dismiss the breach of contract claim based on Plaintiff's argument in his opposition to the Initial Motion to Dismiss. In this opposition to Defendant's Second Motion to Dismiss, Plaintiff reasserts the arguments contained in his initial opposition, provides additional arguments to rebut the new material Defendant added to its Second Motion to Dismiss regarding the breach of contract claim, and opposes Defendant's motion to dismiss the unjust enrichment and quantum meruit claims. In addition, Plaintiff here restates his memorandum in support of his Rule 56(d) Motion, so that the court is not required to refer to the prior opposition in order to read that memorandum.

<u>Statement of Facts</u>

In about April 2016, Plaintiff began working for Defendant as a sales employee. In January 2018, Plaintiff was promoted to Client Executive, and he was assigned a geographical territory in Massachusetts. (Compl. ¶¶ 3 and 4)

At the time of this change, Plaintiff was permitted to continue to work on and receive commissions for five deals on which he had been working (called "Holdover Deals"). Plaintiff was told that if his Holdover Deals closed by March 31, 2018, he would receive a commission for those deals. (Compl. ¶¶ 5 and 6) Plaintiff was told that if a Holdover Deal was close to closing as of March 31, 2018, he could request an exception to the March 31 closing date requirement and still receive the commission for the deal. (Compl. ¶ 7)

One of Plaintiff's Holdover Deals, with Ascension Healthcare ("Ascension") for Crittenton Hospital (called the "Crittenton Deal") effectively closed prior to March 31, 2018, but Defendant failed to pay Plaintiff the commission due for that deal. (Compl. ¶ 8) Prior to March 31, 2018, Plaintiff repeatedly contacted various members of Defendant's management to make sure that he would get the commission on the Crittenton Deal. (Compl. ¶ 12) Defendant's management repeatedly told Plaintiff to continue working on the Crittenton Deal, and no other sales employee was assigned to work on the deal. (Compl. ¶ 13)

At the time, Plaintiff had already participated in a review and hand-off to other employees for all Ascension deals on which he had been working, other than the Crittenton Deal. No such review or hand-off was requested for the Crittenton Deal. Instead, Plaintiff continued to monitor the Crittenton Deal to its conclusion, though no additional work was required after March 31, 2018 to close the deal. (Compl. ¶¶ 14 and 15) Thereafter, the Defendant failed and refused to pay Plaintiff the commission due him on the Crittenton Deal. (Compl. ¶¶ 19)

<u>Argument</u>

I.  <u>Defendant's Second Motion to Dismiss Should Be Denied Because The Document On Which Defendant Relies Was Not The Basis Of The Contract Between The Parties.</u>

In its Second Motion to Dismiss, the Defendant conveniently fails to acknowledge the most crucial requirement for deciding a Rule 12(b)(6) motion, that is, that "the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." See *Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir.1993)*. In deciding such a motion, the Court must merely determine whether the allegations of the complaint constitute a statement of claim under the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. See *Santiago v. Garcia, 70 F. Supp. 2d 84, 86 (D.P.R. 1999)*." *Nolett v. Justices of the Trial Court of Mass.*, 83 F. Supp.2d 204, 208 (D. Mass. 2000) *aff'd* 248 F.3d 1127 (1st Cir. 2000).

To circumvent this requirement, IBM claims that the document attached as Exhibit A to its Second Motion to Dismiss (called the "Incentive Plan Letter" or "IPL") constitutes the contract between Plaintiff and Defendant that is the subject of Plaintiff's Complaint. In its Second Motion to Dismiss, IBM asserts that "[b]ecause Plaintiff's commission payments were governed by the terms of his IPL, Plaintiff incorporated the IPL into the Complaint by affirmatively alleging that IBM failed to pay him commission for the Crittenton Deal."

For support in this proposition, IBM relies on *Mederios v. Lenovo (United States), Inc.,* No. 15-CV-10261-LTS, 2016 U.S. Dist. LEXIS 15469, at *13-14 (D. Mass. Jan. 27, 2016). There, the plaintiff sued defendant for breach of warranty, and the court allowed consideration of the warranty document. The *Mederios* case is inapplicable here, since the IPL was not the contract under which Plaintiff has sued Defendant.

Here, Plaintiff's breach of contract claim is based not on the terms of the IPL but rather on a unilateral contract that was made between the parties between about January and about May 2018 (Compl. ¶¶ 3 through 12). This unilateral contract, separate and apart from the IPL, required Plaintiff to work on the Crittenton Deal, despite the fact that his job duties had changed, and if he closed the deal, IBM would pay him a commission for his work. Defendant accepted the contract via his performance, closed the Crittenton Deal, and IBM then refused to pay him the promised commission. In so doing, IBM breached its unilateral contract with Plaintiff and violated the Wage Act. Since the contract at issue here was a unilateral contract between the parties and not the IPL, the Court cannot consider the terms of the IPL in ruling on the Second Motion to Dismiss.[2] Thus, as the IPL is not the contract over which Plaintiff sued Defendant, this Court must deny Defendant's Second Motion to Dismiss.

II.     <u>Defendant Failed To Provide Appropriate Authentication For the IPL Attached To Its Second Motion to Dismiss, And Therefore This Court May Not Rely On That Document For Support.</u>

Rule 12 of the Federal Rules of Civil Procedure, provides that "[i]f on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 56, in turn, requires, among other things, authentication of any documents submitted for consideration by the Court: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

---

[2]     In support of its claim that Plaintiff somehow incorporated by reference the IPL into his breach of contract claim, Defendant asserts that paragraphs 16 and 19 of the Complaint somehow refer to IPL. In fact, those two paragraphs of the Complaint refer to the fact that IBM failed to pay him a commission (promised as part of the unilateral contract and not by way of the IPL) on the unilateral contract; they do not in anyway refer to or incorporate the IPL into the Complaint.

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

In its Initial Motion to Dismiss, Defendant failed to authenticate the IPL via an affidavit or by any other means. After Plaintiff pointed this fact out to Defendant in Plaintiff's initial opposition, Plaintiff submitted a declaration in which an IBM Vice President asserts that the IPL attached to the Second Motion to Dismiss is "an Incentive Plan Letter" that Plaintiff "accepted." The declaration attached to the Second Motion to Dismiss fails to appropriately authenticate the IPL attached to the Second Motion to Dismiss.

Despite the Defendant's attempt at authentication, the IPL document, on its face, does not indicate that it is an agreement between Plaintiff and IBM. It does not bear Plaintiff's signature, and although it purports to claim that Plaintiff accepted the document, IBM provided no evidence that that is in fact the case. In effect, IBM is asking the Court to "trust us." This Court cannot exercise that kind of trust as a basis for dismissal of Plaintiff's Complaint. Instead, the Court must exclude the IPL from its consideration of Defendant's Motion to Dismiss.

III.   <u>Even If The Court Treats Defendant's Second Motion To Dismiss As One For Summary Judgment, That Motion Must Be Denied Because Defendant Has Failed To Comply With The Requirements Of Local Rule 56.1.</u>

Although Defendant has not requested the Court to consider its Second Motion to Dismiss as one for Summary Judgment under Rule 56, such a request must be denied, and, along with it, the Second Motion to Dismiss, because Defendant has failed to comply with the requirements of Local Rule 56.1. Local Rule 56.1 provides, in relevant part, that "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes

grounds for denial of the motion." *See Cousin v. Harold*, 238 F. Supp.2d 357, 363 (D. Mass. 2002). Without such a concise statement, it is impossible for the court to discern whether there is, in fact, a material factual dispute barring summary judgment. For this reason also, the Court should deny Defendant's Second Motion to Dismiss.

IV. <u>Even If The Court Treats The Second Motion To Dismiss As One For Summary Judgment, The Court Should Deny The Motion, And Grant Plaintiff's Rule 56(d) Motion, Since Plaintiff Has Had No Opportunity To Conduct Any Discovery In This Case.</u>

The American legal system dispensed with the concept of trial by ambush hundreds of years ago, and developed the concept of discovery. Here, IBM would have the Court return to a trial by ambush model. IBM filed its Second Motion to Dismiss before providing Plaintiff with its required disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, then cherry-picked the document it disclosed by attaching it as an exhibit to its Second Motion to Dismiss, as the sole support for its Motion. It has provided no evidence that, even if the IPL formed a part of the contract that is the basis for Plaintiff's claim (which it does not), the document attached to its Second Motion to Dismiss is, in fact, an IPL to which the parties had agreed. Again, in effect, IBM is saying to this Court, "trust us on this one."

As noted above, Plaintiff has moved this Court to permit the parties to conduct discovery as normally permitted under the Federal Rules of Civil Procedure and the Local Rules of this Court, pursuant to Rule 56(d), and has submitted the Affidavit of Judith A. Miller in support of this motion. Rule 56(d) provides, in relevant part:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    deny the motion [for summary judgment];
> (2)    order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3)    issue any other just order.

Although technically, parties can file for summary judgment at any time, courts generally defer ruling on summary judgment motions until the parties have completed discovery. *Id.* Under these circumstances, Courts require the party invoking Rule 56(d) to show that additional discoverable materials are likely to be obtained that are likely to create a genuine issue of material fact. *Id.* at 364.

Here, Plaintiff has not had the opportunity to conduct any discovery whatsoever, and there is a whole host of documents and information that are likely to be uncovered that will not only create a genuine issue of material fact but will support Plaintiff's breach of contract and wage act claims. Plaintiff should be entitled to conduct discovery in this matter with the same freedom and lack of constraint as he would have been accorded in this matter absent Defendant's Second Motion to Dismiss, but, because of the requirements of Rule 56(d), the following are examples of some (but not all) of the documents and information Plaintiff should be able to obtain before the court rules of Defendant's Second Motion to Dismiss. For example, Plaintiff should be permitted to obtain documents, including emails and other electronic records, and depose witnesses, to prove the formation of the unilateral contract, separate and apart from any IPL, to prove that Plaintiff in fact performed the requirements of the unilateral contract, and to prove that Defendant breached that contract.

In sum, Defendant has attempted to foreclose Plaintiff's right to conduct discovery in this matter by filing its Second Motion to Dismiss before any discovery has been conducted. This strategy violates both the letter and spirit of the Federal Rules of Civil Procedure. As such, the Court must deny Defendant's Second Motion to Dismiss and allow Plaintiff to fully conduct discovery by granting Plaintiff's Rule 56(d) Motion.

V.    Defendant's Substantive Arguments for Dismissal Have No Merit.

A.    Plaintiff's Breach of Contract Claim.

1.    The parties entered into an enforceable unilateral contract.

In its Second Motion to Dismiss, Defendant claims that Plaintiff has not alleged an enforceable oral contract, claiming that the oral contract was silent as to how the commissions would be calculated.  In fact, the Court easily and clearly can infer from the language of the complaint that both parties understood that the promised commission would be calculated in the usual way in which Plaintiff's commissions had been calculated in the past (though not based on the terms of the IPL, as the unilateral contract superseded those terms).  Paragraph 6 of the Complaint specifically states, "Plaintiff was told that if his Holdover Deals closed by March 31, 2018, he would receive a commission for those deals."  The court certainly can infer from this that the parties understood that the commission would be calculated as commissions had been calculated in the past.  As such, the Complaint clearly states all of the material terms of the unilateral contract.

2.    IBM did not retain sole discretion to adjust Plaintiff's commissions.

IBM also argues that since the IPL that it purports forms the basis of the contract that Plaintiff asserts it breached, and the IPL includes a provision that IBM can change or cancel the IPL at whim, IBM was under no obligation to pay Plaintiff the commission.  This argument is misplaced.

In fact, the Complaint alleges that the parties entered into a unilateral contract, separate and apart from the IPL, that IBM breached.  Under Massachusetts law, "[w]hen an offer calls for an act or conduct to be performed by the offeree, and the offeree performs that act or conduct in accordance with the offer, the offeree has accepted the offer, the offeror has received valuable

consideration, and a unilateral contract is formed." *McQueen v. True Partners Consulting LLC*, 2011 Mass. Super. LEXIS 108 *; 28 Mass. L. Rep. 411 (Jan. 7, 2011) *citing Northampton Inst, for Savings v. Putnam,* 313 Mass. 1, 7 (1943). Here, the Complaint makes clear that IBM's offer to receive a commission in exchange for closing the Crittenton Deal did not include a term by which the Defendant could modify the agreement. More importantly, once the offeree performs under a unilateral contract, the offeror cannot then retroactively change the terms of the deal. As such, IBM had no right to revoke the unilateral contract after Plaintiff performed all of his obligations under the unilateral contract.

In its Second Motion to Dismiss, Defendant asserts that "numerous courts across the country – including four Circuit Courts of Appeals—have address this exact scenario and have dismissed nearly identical breach of contract claims seeking unpaid commissions in light of clear disclaimers in IBM's incentive plans." This statement is misleading; in fact in each of these cases, the employee sued IBM because it failed to follow the terms of an IPL and not because it entered into a unilateral contract that IBM breached. In *Wilson v. IBM,* 610 Fed. Ap'x 886, 889-89 (11th Cir. 2015) (an unpublished, per curium decision), *Kavitz v. IBM,* 458 F. App'x 18 (2nd Cir. 2012), *Jensen v. IBM*, 454 F.3d 382 (4th Cir. 2006), and *Schwarzkopf v. IBM,* No. C 08-2715, 2010 U.S. Dist LEXIS (N.D. Cal. 2010), the courts did not dismiss the cases as the result of a motion to dismiss, but rather, dismissed on a motion for summary judgment. Moreover, in each of these cases the issue was the manner in which a commission was calculated, and not whether the employee was being compensated for work performed. Moreover, the employees in each of these cases admitted that the basis for the breach of contract claim was IBM's IPL. Here, the basis for Plaintiff's claim is a unilateral contract, and not the IPL. In *Geras v. IBM,* 638 F.3d 1311 (10th Cir. 2011), *Morris v. IBM*, 1:18cv-0042-LY (W.D. Tex. Feb. 4, 2019), *Fessler v. IBM,*

1:18-cv-798, 2018 U.S. Dist. LEXIS 202725 (E.D. Va. Nov. 28, 2018), *Pfeister v. IBM,* No. 17-cv-03573, 2017 US Dist. LEXIS 170970 (N.D. CAL. Nov. 4, 2010), *G.S. (Steve) Rapier v. IBM,* No. 1:17-cv-4640-MHC, 2018 U.S. Dist. LEXIS 117504 (N.D. Ga. Apr. 12, 2018), *Kemp v. IBM*, No. 3:09-cv-03683, 2010 U.S. Dist. LEXIS 118801, at *13-14 (N.D. Cal. Nov. 4, 2010), *Gilmour v. IBM,* No. CV 09-04155, 2009 U.S. Dist. LEXIS 127142, at *7 (C.D. Cal. Dec. 16, 2009), and *Rudolph v. IBM,* 2009 U.S. Dist. LEXIS 75261, at *9-11 (N.D. Ill. Aug. 21, 2009), although the courts decided these cases based on a motion to dismiss, the plaintiffs in each of these cases claimed that IBM breached the IPL.  Again, here, Plaintiff's breach of contact action is based on his unilateral contract to perform certain work, which he did, and pursuant to which IBM failed to pay him.  Therefore, these cases lend IBM no support in its Second Motion to Dismiss.

In its Second Motion to Dismiss, the Defendant tries to characterize the unilateral contract between Defendant and Plaintiff on which Plaintiff's complaint is based as a "side agreement" that required a "meeting of minds."  In support, Defendant cites two cases, *Fessler v. IBM,* and *Vinson v. IBM,* 1:17-cv-00798, 2018 U.S. Dist. LEXIS 164042, at *8-9 (M.D.N.C. Sept, 25, 2018).  Both of these cases are easily distinguishable.  In each of these cases, the plaintiff argued that a PowerPoint and management statements that IBM would not cap the plaintiffs' commissions constituted a side agreement between IBM and its employees.  Unlike the instant case, those agreements require a "meeting of the minds."  Here, no such assent was required; all that was required was Plaintiff's PERFORMANCE of the offer, that is, effectively closing the Crittenton Deal by March 31, 2018.  Thus, those cases do not lend IBM any support here.

3.    <u>The Complaint Sufficiently States Facts to Support a Claim That IBM Breached Its Unilateral Contract With Plaintiff</u>

In its Second Motion to Dismiss, Defendant argues that the Crittenton Deal did not close by March 31, 2018, that that was a requirement of the unilateral contract, and therefore, there was no breach of the unilateral contract. Simply put, Defendant's reading of the Complaint is incorrect.

The Complaint specifically states that the Crittenton Deal closed prior to March 31, 2018. (Compl. ¶¶ 8 and 9) Although IBM may have decided to recognize the revenue from the Crittenton Deal at a later date, the Complaint makes clear that Plaintiff closed the Crittenton Deal prior to March 31, 2018. Thus, this argument cannot form the basis for this Court to dismiss Plaintiff's breach of contract claim.

4.    <u>Even Based On the Terms Contained in Defendant's IPL Exhibit, Defendant Had No Right To Deny Plaintiff the Commission On The Crittenton Deal</u>

Contrary to Defendant's contentions, the IPL, by its terms, does not permit IBM to withhold a commission already earned. Thus, even based on the terms of the IPL, IBM breached its agreement with Plaintiff.

The IPL states that it gives IBM the "right to adjust Plan terms" or to "modify or cancel the Plan [as a whole]" but it does not give IBM the "right" to withhold a commission on one particular deal after the work on that deal has been completed. The provision on which IBM hangs its hat provides:

> **Right to Modify or Cancel:** IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing an offered or accepted Incentive Plan Letter.

In the laundry list of things the IPL says IBM can do to adjust commissions, the IPL does not provide that IBM can simply refuse to pay the employee on a particular deal after the employee closes the deal. The plain meaning of the IPL allows IBM to "adjust the Plan terms" or "modify or cancel the Plan," but IBM did neither of those things in this case. Here, IBM refused, after the fact, to pay any commission at all to Plaintiff; even if the terms of the IPL governed payment of this commission (which it does not), the IPL does not give IBM the "right" to withhold a commission already earned. For this reason, as well, the Court must deny Defendant's motion to dismiss Plaintiff's contract claim.

      B.     <u>Plaintiff's Wage Act Claim.</u>

Defendant has moved to dismiss Plaintiff's claim under the Wage Act, claiming that the commission denied to Plaintiff did not constitute wages as defined by the Wage Act. Specifically, IBM claims that the commission was a discretionary incentive award, like a bonus. IBM appears to acknowledge that under the Wage Act, the "payment of commissions" represents wages "when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee." Mass. Gen. Laws ch. 149, § 148. IBM claims that the commission on the Crittenton Deal could not be "definitely determined" because the IPL gives it discretion to modify or cancel the plan. This argument fails on a number of grounds.

Most importantly, the Wage Act prohibits employers from including a provision in a commission plan that allows the employer to renege on paying a commission once the employee has done the work required to earn the commission. The Wage Act specifically provides that "no person shall by a special contract with an employee or by any other means exempt himself" from the timely payment of wages to that employee. Mass. Gen. Laws ch. 149, §148. Once an

employee earns the commission, his employer may not by contract reduce or fail to pay the commission earned, even if the employee agrees to such a term. *Meschino v. Frazier Indus. Inc.,* 2015 U.S. Dist. LEXIS 155997, 2016 U.S. Dist. LEXIS 100363 (D. Mass. 2016).

Massachusetts case law makes clear that the "right to modify or cancel" provision contained in the IPL is just such a prohibited special contract. In *Meschino*, this court ruled that a provision in the plaintiff's commission plan that allowed the employer to deduct certain sums from an employee's commissions for losses sustained on jobs the employee sold, was just such a prohibited special contract.

Similarly, in *Awuah v. Coverall N. Am., Inc*., 460 Mass. 484 (2011), the SJC ruled that once the employee completed his work, the employer could not reduce an employee's commission for that work, even if the employer's customer failed to pay the employer for the work employee performed. The SJC acknowledged that any type of holdback or deduction from a commission, once it is earned, constitutes an impermissible special contract. The Court explained:

> [t]he Wage Act requires an employer to pay "the wages earned" to an employee within a fixed period of days after the end of a pay period. G.L. c. 149, § 148. The word "earn" is not statutorily defined, but its plain and ordinary meaning is "[t]o acquire by labor, service, or performance," or "[t]o do something that entitles one to a reward or result, whether it is received or not." Black's Law Dictionary 584 (9th ed. 2009). Where an employee has completed the labor, service, or performance required of him, therefore, according to common parlance and understanding he has "earned" his wage.

*Id*. at 492. Once the wages are earned, the employer may not reduce or fail to pay them for any reason, even if the employee agreed to such a reduction. *Id.*

In *McAleer v. Prudential Ins. Co. of Am,* 928 F. Supp. 2d 280 (D. Mass. 2013), this Court held that a provision similar to the IPL provision was a prohibited special contract. There, the employer claimed that because its commission plan entitled it to withhold commissions from an

employee in its discretion, the commissions could never be definitely determined and, therefore, were not wages. This Court disagreed and denied Defendant's motion to dismiss McAleer's Wage Act claim, explaining:

> Prudential argues that because the plan affords it complete discretion for interpretation and payment calculation - including discretion to determine whether McAleer was eligible to receive commissions as an active employee in good standing - McAleer's commissions cannot be arithmetically determinable. This argument fails. Discretion prevents commissions from being definitely determined if the employer is under no obligation to award them. See *Weems v. Citigroup Inc.*, 453 Mass. 147, 900 N.E.2d 89, 94 (Mass. 2009) (holding that the "operative fact" in finding discretionary bonuses not to be definitely determined is "not [that] they are labeled bonuses, but [that] the employers are, apparently, under no obligation to award them"). While Prudential exercises substantial discretion in the *administration* of the commission plan, the commissions are not *themselves* discretionary. The plan does not afford Prudential carte blanche to withhold or modify commission payments for any reason. It simply affords discretion over factual determinations, calculations, and eligibility. To interpret the discretion under the plan as broadly as Prudential would have it would render the plan meaningless.

*Id.* at 287-288. Thus, under the Wage Act, contracts whereby employers can withhold earned commissions once the work has been done are prohibited. The IPL is just such a contract, and, therefore, it cannot be used to defeat a claim for a commission, once the work has been done. Here, Plaintiff worked on and closed the Crittenton Deal, and under the Wage Act, the commission is definitely determined and due and payable. As such, Defendant has no basis for its motion to dismiss Plaintiff's Wage Act claim.

Defendant also argues that the Complaint does not state the basis on which the commission would be calculated, and therefore it does not constitute "wages." This argument is misplaced. The Complaint makes clear that all parties understood that the commission on the Crittenton Deal would be calculated in the manner that Plaintiff's commissions had been calculated in the past. Thus, the Complaint alleges that the amount of the commission was

definitely determined and due and payable, and therefore, the court must deny the motion to dismiss Plaintiff's Wage Act Claim on this basis, as well.

Finally, contrary to Defendant's assertion, even if the IPL was not a prohibited special contract, by its terms, it does not permit IBM to withhold a commission already earned, and, therefore, it does not render such commissions undeterminable.  The IPL states that it gives IBM the "right to adjust Plan terms" or "modify or cancel the Plan" but it does not say that IBM has the "right" to withhold commissions once those commissions have been earned.  That paragraph provides:

> **Right to Modify or Cancel:**  IBM reserves the right to adjust the Plan terms, including, but not limited to, changes to sales performance objectives, assigned territories or account opportunities, applicable incentive payment rates or similar earnings opportunities, or to modify or cancel the Plan, for any individual or group of individuals, including withdrawing an offered or accepted Incentive Plan Letter.

In the laundry list of things the IPL says IBM can do to adjust commissions, the IPL does not provide that IBM can retroactively refuse to pay the employee on a particular deal.  Like the plan at issue in *McAleer,* allowing IBM to interpret the IPL "as broadly as [IBM] would have it would render the plan meaningless."  Thus, even if the IPL governed Plaintiff's work on and closing of the Crittenton Deal, the IPL did not give IBM the ability to simply refuse to pay him the commission, once the work had been completed.

In sum, Plaintiff closed the Crittenton Deal, and IBM failed to pay him the commission that was due and owing him for that deal.  IBM's failure to pay Plaintiff is a violation of the Wage Act.  Therefore, this Court must deny Defendant's motion to dismiss Plaintiff's Wage Act claim.

C.    Plaintiff's Unjust Enrichment and Quantum Meruit Claims

In its Second Motion to Dismiss, Defendant claims that Plaintiff could not have had a reasonable expectation of receiving payment for the Crittenton Deal because the IPL allegedly gave IBM the discretion to refuse payment for any reason.  This argument, like Defendant's argument regarding Plaintiff's breach of contract claim, is based on the mistaken notion that Plaintiff's claim is based on the terms of the IPL.  It is not.  Plaintiff's claim here is based on IBM's representation that if Plaintiff closed the Crittenton Deal by March 31, 2018, the Company would pay him a commission for that work.  (Compl. ¶ 6)  This was an offer that was separate and apart from the content of the IPL.  Plaintiff worked on and closed the Crittenton Deal before March 31, 2018, further reinforcing the reasonable expectation that he would be paid for his work.  (Compl. ¶ 8)  Taking the facts in the light most favorable to Plaintiff, it is clear that the offer that IBM made was not contingent upon the content of the IPL and, therefore, Plaintiff's expectation of payment was certainly reasonable.

Again, the cases on which Defendant relies for support are inapplicable to this situation. In those cases, the statements on which the plaintiff relied were simply statements of what IBM intended to do pursuant to the content of the IPL at issue in those cases.  There, plaintiff did not have to take any action or change position to obtain the promised benefit.  Here, the Plaintiff performed a substantial amount of work to close the Crittenton Deal in reliance on the promise that he would be paid a commission for his work.  IBM received the benefit of Plaintiff's work but failed to compensate him for the value of that work.  Thus, the case here is distinguishable from the cases Defendant cites.  As Plaintiff here has made out all of the elements for his claims of unjust enrichment and quantum meruit, this court must deny Defendant's motion to dismiss counts III and IV of the First Amended Complaint.

Conclusion

For all of the foregoing reasons, Plaintiff requests that this court deny Defendant's Second Motion to Dismiss, grant Plaintiff's Rule 56(d) motion, and order the parties to proceed with required disclosures and discovery in the normal course.

ADAM CAMOBRECO

By His Attorney,

____/s/Judith A. Miller_____
Judith A. Miller, BBO # 544756
Miller Employment Law
233 Needham St., Suite 540
Newton, MA 02464
617-969-2900
millerjudi@aol.com

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served upon Jamie L. Kessler, Jackson Lewis P.C., 75 Park Plaza, Boston, MA 02116, and Justin R. Barnes and Kelli N. Church, Jackson Lewis P.C. 1155 Peachtree Street, NE, Suite 1000, Atlanta, GA 30309 via the Court's Electronic Filing System pursuant to Local Rule 5.2(b) on March 19, 2019.

____/s/Judith A. Miller_____
Judith A. Miller